**In re Brian L. HUNT, Alice P. Hunt, Debtors.**

**Brian Lee Hunt, II, Plaintiff**

**v.**

**Brian L. Hunt, Alice P. Hunt, Defendants.**

**Bankruptcy No. 08–40525. Adversary No. 08–4050.**

United States Bankruptcy Court, N.D. Indiana, Hammond Division.

Oct. 26, 2010.

C. David Little, Power, Little & Little, Frankfort, IN, for Plaintiff.

Brian L. Hunt, Lafayette, IN, pro se.

### *DECISION*

ROBERT E. GRANT, Chief Judge.

What is defalcation? That is the question presented in this adversary proceeding which seeks a determination of dischargeability under § 523(a)(4) of the United States Bankruptcy Code—"... defalcation while acting in a fiduciary capacity."

The debtor/defendant, Brian Hunt, Sr.,[1] is the plaintiff's father and the trustee of a trust established for the plaintiff's benefit. He is also the victim of two Internet scams, having been taken in by what have come to be called advance-fee scams. The essence of this deception is that a substantial sum of money is tied up somewhere, often due to some bureaucratic or tax complication. The victims are told that the only obstacle to the fund's release is the payment of some tax or other fee; they

---

1. The claims against Alice Hunt were dis-     missed prior to the conclusion of trial.

are promised a share of the fund if they will wire the money needed to make that payment. Of course, the payment turns out to be insufficient, there is a delay and another fee, another tax, or another license that needs to acquired, and the victims are asked to wire more money to cover the new expenses. Delay follows delay, fee follows fee, and the victims keep advancing funds until they are either bled dry or refuse to play along any further.

The defendant succumbed to two such scams. The first involved trunks, supposedly smuggled out of the Middle East containing cash and securities, that were stored with a security company in Amsterdam. He was asked to help pay the storage and other charges needed to obtain their release; in return he would be given a share of the contents and then placed in charge of investing the remainder on behalf of the owner. The second scam involved an inheritance in Ghana, which was to be invested in a gold mine. The defendant was asked to pay taxes and other fees associated with the inheritance, organizing a corporation, and acquiring the mine; in return he was to be given 15% of the inheritance, 15% of the corporation's stock and to become the corporation's CEO and chairman of the board. The defendant investigated both of these opportunities, made several trips to London, Amsterdam and Ghana, met with the perpetrators, including one who represented himself to be an English solicitor, visited the warehouse in Amsterdam and the gold mine in Ghana, and reviewed various documents, certificates and affidavits. Having done so, he concluded that both proposals represented legitimate opportunities. The result was a loss of several hundred thousand dollars.

Unfortunately, half of those dollars—$149,709 to be precise—came from the trust. Plaintiff contends that the debtor's decision to use the trust's funds for such "investments" violates Indiana's Prudent Investor Act and constitutes defalcation in a fiduciary capacity, resulting in an obligation that is nondischargeable under 11 U.S.C. § 523(a)(4).[2]

Two different lines of authority have arisen with regard to what constitutes "defalcation" for purposes of § 523(a)(4). The first interprets the term broadly, so that "[a]ny failure to maintain the standard of care attributable to a fiduciary is a bad act that is nondischargeable...." *In re Storie,* 216 B.R. 283, 289 (10th Cir.BAP 1997). *See also, In re Johnson,* 691 F.2d 249, 256–57 (6th Cir.1982); *In re Goodwin,* 355 B.R. 337, 345 (Bankr.M.D.Fla.2006); *In re Miller,* 133 B.R. 405, 408 (Bankr.S.D.Ohio 1991) ("'defalcation' is quite broad and intended to include innocent or negligent defaults in duty as well as intentional acts."). The second line of authority interprets the term narrowly; the mere breach of a fiduciary duty will not, by itself, constitute defalcation. Instead, nondischargeability requires some degree of culpability or self-interested use of the trust property by the trustee. *See, In re Hanson,* 432 B.R. 758, 775 (Bankr.N.D.Ill.2010); *In re Ellenbogen,* 218 B.R. 709, 714–17 (Bankr. S.D.N.Y.1998); *In re Hanes,* 214 B.R. 786, 813 (Bankr.E.D.Va.1997); *In re Woods,* 284 B.R. 282, 290 (D.Colo.2001). Poor judgment is, not enough. *Woods,* 284 B.R. at 291. *See also, In re Hemmeter,* 242 F.3d 1186 (9th Cir.2001) (bad investments do not constitute defalcation); *In re Ellenbogen,* 218 B.R. 709 (Bankr.S.D.N.Y.1998) (violation of prudent investor rule does not

---

**2.** For the purpose of this decision, the court assumes that the debtor would be liable to the plaintiff under Indiana law. It does not need to determine that issue because of its conclusion that debtor's conduct does not constitute defalcation; so any debt that might exist is dischargeable.

constitute defalcation). *But see, Miller,* 133 B.R. at 409 (investment in "dollar stocks" was imprudent and constituted defalcation).

■ The Seventh Circuit has never addressed the meaning of defalcation under § 523(a)(4). It has, however, addressed the meaning of that term for the purpose of § 523(a)(11), "defalcation while acting in a fiduciary capacity committed with respect to any depository institution or insured credit union." *See, Meyer v. Rigdon,* 36 F.3d 1375 (7th Cir.1994). After surveying the conflicting authority, it concluded that a narrow interpretation was more appropriate. *Id.* at 1382–85. The negligent breach of a fiduciary duty is not enough. Defalcation requires recklessness or a willful or knowing breach of duty. *Id.* at 1385. *See also, In re Ward,* 425 B.R. 507, 526 (Bankr.E.D.Wis.2010); *In re Scarpello,* 272 B.R. 691, 703 (Bankr. N.D.Ill.2002); Hanson, 432 B.R. at 775. Although *Meyer* dealt with defalcation under § 523(a)(11), the same terms used in the same section of the Bankruptcy Code should have the same meaning, and so the circuit's conclusion is equally applicable to the meaning of defalcation under § 523(a)(4): it requires a knowing, willful or reckless breach of fiduciary duties.

■ Willfulness requires an intentional injury, not just an intentional act that leads to injury. *Kawaauhau v. Geiger,* 523 U.S. 57, 61–62, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998). To act knowingly requires a similar level of intent: one acts with the knowledge that what they do is impermissible. *Meyer,* 36 F.3d at 1385. Recklessness does not require intent; in this context it involves a complete indifference to the consequences of one's actions; one does not care about the outcome. *See,* Black's Law Dictionary (9th ed. 2009).

■ The defendant's actions were not willful, knowing, or reckless. He certainly did not know these were bad investments or intend to lose substantial amounts of both his own and the trust's money. To the contrary, his goal was to increase those funds by investing them in something that would produce a higher rate of return. Neither can we say he was indifferent to the consequences of the investments. To the contrary, he cared very deeply about the outcome. He investigated the proposals, made trips to England, Amsterdam and Ghana, and met with the perpetrators before deciding what to do. The problem is not his attitude toward investing the trust's funds but the conclusions he drew from his investigation. He had an over-inflated opinion of his own abilities and was completely taken in. Rather than recognizing the proposals as scams, he decided they were legitimate opportunities. Even now, years later and despite knowing the outcome, the court is left with the impression that the defendant continues to believe he was dealing with honest people who offered him legitimate opportunities, and anyone who may think otherwise simply does not understand the way things are done in other countries or international monetary transactions.

The defendant was undoubtedly negligent in his choice of investments for both himself and the trust; gullible and even quintessentially stupid. Nonetheless, his actions do not constitute defalcation under § 523(a)(4), and any obligation he may have to the plaintiff because of them is dischargeable. Judgment will be entered accordingly.